**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| FAULKNER UNIVERSITY, an Alabama non-profit corporation; )<br><br>**Plaintiff** )<br><br>v. )<br><br>NATIONAL ASSOCIATION OF INTERCOLLEGIATE ATHLETICS, a foreign corporation; SOUTHERN STATES ATHLETIC CONFERENCE, INC., a foreign corporation; )<br><br>**Defendants.** ) | CASE NO.: _____ |

---

**VERIFIED COMPLAINT AND EMERGENCY REQUEST FOR**
**TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF**

---

## I.    INTRODUCTION.

Defendant National Association of Intercollegiate Athletics ("NAIA"), at 4:54 a.m. Saturday morning, April 19, informed Faulkner University, by email, that its baseball team would have to forfeit 39 games from its 2025 baseball season because it played an ineligible player, effectively ending the team's chances at earned postseason play.  The NAIA's decision in violation of its own bylaws means that Faulkner will not get to play in the Southern States Athletic Conference, Inc.'s ("SSAC") post-season tournament, nor will Faulkner be able to participate in the

opening round of the NAIA National Tournament. The SSAC's tournament is set to begin on **April 30, 2025 – that is, in five (5) days**.[1] Before the NAIA's decision over this past weekend, Faulkner was the second seed (of eight teams) going in to the SSAC's tournament.

But Faulkner cannot be subject to the penalty of forfeiting games for playing an ineligible player unless certain conditions not present here have been shown. The NAIA's bylaws (sometimes "Bylaws") on "Infractions" are clear on this point:

NOTE:  Forfeits shall not be required nor will an institution be subject to any penalties if a student who has been properly certified as eligible represents an institution in competition but is subsequently determined to have been ineligible due to any of the following:
      a. A mistake by the NAIA Eligibility Center;
      b. False information was supplied by the student; or
      c. False information was supplied on the student's behalf.

Forfeits shall be required and the institution may be subject to additional penalties if the institution knew of the eligibility center's mistake or the dissemination of false information, or if the institution failed to perform due diligence on the student's eligibility certification.

As shown in this Verified Complaint and the attached affidavits, the Faulkner player "subsequently determined to have been ineligible" was due to (1) a mistake by the NAIA Eligibility Center; (2) false information supplied by the Faulkner player who was subsequently disqualified; and (3) false information supplied on that Faulkner player's behalf by his former college team. That is, the reasons the Faulkner player was subsequently determined to have been ineligible are the exact reasons excluded

---

[1] SSAC 2025 Baseball Championship website, last visited April 23, 2025, at 6:20 p.m. https://ssacsports.com/tournaments/?id=6601.

in the NAIA's bylaws from triggering a forfeiture.

Faulkner requests this Court grant an Emergency Temporary Restraining Order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, as follows:

- This Court order that the NAIA is prevented, pursuant to its own policy and procedure, from forfeiting any of Faulkner's 2025 baseball games; or

- This Court order that, until it can be determined whether Faulkner must forfeit any 2025 baseball games, the SSAC cannot conduct its 2025 post-season tournament.

As grounds for this Verified Complaint and Motion, Faulkner states as follows:

## II.    PARTIES.

1.    Plaintiff Faulkner University is and was at all times material herein an Alabama non-profit Corporation whose principal place of business is in Montgomery, Alabama; thus, it is a citizen of the State of Alabama.

2.    Defendant National Association of Intercollegiate Athletics ("NAIA") is a registered benevolent corporation organized and existing under the laws of the state of Missouri since 1961; thus, the NAIA is a citizen of the State of Missouri.

3.    Defendant Southern States Athletic Conference, Inc. ("SSAC") is, upon information and belief, a foreign corporation or unincorporated association operating under the law of the State of Georgia; thus, it is a citizen of the State of Georgia.

## III.    JURISDICTION.

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C.

§1332, as the parties are diverse and the amount in controversy for losing the rights to host the first round of the tournament and lost revenue from missing the tournament exceeds $75,000. Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the "substantial part of the events or omissions giving rise to the claim occurred" in Montgomery, Alabama.

## IV.    FACTUAL ALLEGATIONS.

### Background on the SSAC Tournament and Seeding

5.    Faulkner University is a member school in the SSAC,[2] which is a conference of the NAIA. (Ex.1 - Affidavit of Patrick McCarthy.)

6.    The SSAC will host its 2025 Baseball Championship tournament April 30, 2025, through May 3, 2025, in Jackson, Tennessee. (Ex. 1.)

7.    The top eight baseball SSAC teams, as ranked by their 2025 records, will play in the SSAC tournament. (Ex. 1.)

8.    The winner of the tournament receives an automatic qualifying bid to play in the NAIA's National Tournament. Other SSAC teams playing in the SSAC tournament can contend for an "at-large" bid, based on their record and rank for the 2025 season. (Ex. 1.)

9.    The eight seeded baseball teams – of which Faulkner is currently seeded

---

[2] SSAC 2025 Baseball Championship website, last visited April 23, 2025, at 6:20 p.m. https://ssacsports.com/sports/2021/7/1/members.aspx

number two – will not be determined until the final games of the 2025 regular season are completed on Thursday and Friday, April 24-25.  For example, Faulkner plays the University of Mobile in Montgomery at 3pm and 6pm on Thursday, April 24, and it will play its final game of the regular season at 4pm today, Friday, April 25. All SSAC regular-season baseball games, which determine seeding, will be completed sometime after 4pm on Friday, April 25, 2025.  (Ex. 1.)

10.    Faulkner's 2025 baseball team has an overall record of 32-12 (updated as of the scores last night) and a conference record of 20-9 (updated as of the scores last night), making Faulkner the current number two seed for the SSAC tournament. (Ex. 1.)

11.    Regardless of the outcome of its last three regular season games against the University of Mobile, Faulkner's conference record of 19-8 guarantees it is one of the top eight positions in SSAC's post-season tournament.  (Ex. 1.)

<u>Orlando Lorduy's Eligibility</u>

12.    Orlando Lorduy is an outfielder for the Faulkner Eagles.  Orlando played in 39 games for Faulkner during the 2025 season, up to Faulkner's early morning email notification on April 19 of Orlando's potential ineligibility.  Orlando has not played any games since that notification.   (Ex. 1.)

13.    Orlando played for Faulkner in the 2024 season.  (Ex. 1.)

14.    Before playing for Faulkner, Orlando played baseball for Benedictine

University for the 2020-2021, 2021-2022, and 2022-2023 seasons. (Ex. 2 – Affidavit of Orlando Lorduy.)

15.    Faulkner initially believed and therefore told Orlando that the 2024 baseball season was his last year of eligibility. Orlando independently believed, though, that he had another year of eligibility to play baseball at the collegiate level. (Ex. 2.)

16.    In July 2024, Orlando, without any assistance from or notice to Faulkner, emailed the NAIA Eligibility Center about an additional year of eligibility. (Ex. 2.)

17.    On July 15, 2024, Orlando received an email reply from Ben Woytych, an employee of the NAIA Eligibility Center Customer Relations.[3] Woytych told Orlando in the email that, "Spring 2021 did not count towards your overall terms of attendance or seasons charged." (Ex. 2.)

18.    The next day, Orlando informed his Faulkner coaches that the NAIA Eligibility Center Customer Relations had advised him that "Spring 2021 did not count towards your overall terms of attendance or seasons charged." (Ex. 2.)

19.    On July 22 or 23, 2024, Orlando became aware of emails between Benedictine University and NAIA Legislative Services that indicated he did not have

---

[3]    Ben    Woytych    is    an    NAIA    Eligibility    Center    Coordinator. https://www.naia.org/information/directory/index

an additional year of eligibility. Rather, based on internal information available only to Benedictine University and the NAIA Legislative Services, the NAIA calculated Orlando's eligibility as follows:

> 2020-2021 – 1 season of Competition charged at Benedictine University (played in more than 50% of contests).
> 2021-2022 – 1 season of Competition charged at Benedictine University (played in more than 20% of contests).
> 2022-2023 – 1 Season of Competition charged at Benedictine University (played in more than 20% of contests).
> 2023-2024 – 1 Season of Competition charged at Faulkner University (played in more than 20% of contests).

(Ex. 2.)

20.   After receiving these emails, Orlando did not provide this information to any representative of Faulkner. (Ex. 2.) Faulkner first learned of these emails on **April 22, 2025**. (Ex. 2.)

21.   In the meantime, Dr. Cindy Walker, Faulkner's Faculty Athletic Representative, began her normal process of determining each student-athlete's eligibility to participate in the fall 2024 and spring 2025 season. That process includes, among other things, reviewing information provided by the NAIA's Eligibility Center, investigating each player's previous seasons of play at other universities, and reviewing statistics maintained by other universities. (Ex. 3 – Affidavit of Dr. Cindy Walker.)

22.    In reviewing eligibility of players based on their participation in contests in the spring of 2021, Dr. Walker considered the NAIA's COVID policy from that time that provided: "Spring sport athletes will be only charged SOC for the 2020-2021 academic year if they play more than 50% of the frequency of play limits for their sport or by competing in postseason competition." (Ex. 3.)

23.    In July 2024, Dr. Walker learned of Woytych's email confirmation on behalf of the NAIA Eligibility Center that the spring 2021 season did not count toward Orlando's overall terms of attendance or seasons charged. (Ex. 3.)

24.    Dr. Walker continued to investigate Orlando's eligibility for the spring 2025 season by reviewing Benedictine University's publicly available stats showing that Orlando participated in only one game during the spring 2021 season – that is, the COVID season that counted against a student-athlete's eligibility only if that player competed in more than 50% of the contests. (Ex. 3.)

25.    On or about January 16, 2025, Dr. Walker certified to the NAIA the student-athletes eligible to participate in the 2025 Spring baseball season for Faulkner. (Ex. 3.) Orlando was on the roster certified by Dr. Walker. The NAIA approved that roster.

The Attempt to Force a Forfeiture of Faulkner's 2025 Baseball Season

26.    On April 14, 2025, after a weekend series between the Faulkner Eagles and the William Carey Crusaders, another member of the SSAC, William Carey's

Athletic Director called Dr. Walker to report that William Carey believed that Orlando was ineligible because Orlando had played in the NAIA post-season in the Spring of 2021 while he was enrolled at Benedictine University. (Ex. 4 - Faulkner University's 2025 Baseball Schedule.)

27.    That same day or the next, Dr. Walker, on behalf of Faulkner University, contacted Brenda White, Director of Legislative Services with the NAIA, and requested guidance on the determination of Orlando's eligibility for the 2025 Spring baseball season. (Ex. 5 – Email chain between Dr. Cindy Walker and Brenda White.) In response to an email from Dr. Walker in which Dr. Walker outlined the steps that Faulkner had taken to determine Orlando's eligibility, White confirmed that "It does sound like Faulkner tried its best to verify the statistical information." (Ex. 5.)

28.    On April 15, 2025, Dr. Walker received an email from Woytych, the NAIA Eligibility Center Coordinator. Woytych indicated in the email that he had attempted to look online for stats for Orlando's time at Benedictine University, but that Benedictine University's website was inconsistent. Rather than sort out the inconsistencies with the stats for Orlando on Benedictine University's website, Woytych pushed the burden of determining how many games Orlando had played in the 2021 baseball season onto Faulkner University, notwithstanding Woytych's position as the NAIA's Eligibility Center Coordinator. (Ex. 6 – Emails between

Woytych and Dr. Cindy Walker.)

29.    In the meantime, Faulkner University, now having been alerted by William Carey of the possible issue with Orlando's eligibility for the 2025 season, continued to investigate whether Orlando actually participated in 50% of contests in the spring of 2021. (Ex. 7 – Emails between Dr. Cindy Walker and Tracy English, Athletic Director of William Carey.)

30.    This past Saturday, on April 19, 2025, at 4:54 a.m., Faulkner received, via email, the NAIA's decision that Orlando is no longer eligible to compete in NAIA athletic competition, and that Faulkner University must forfeit all contests that Orlando competed in during the 2025 Spring baseball season. (Ex. 3 – Affidavit of Dr. Cindy Walker.)

31.    In the email, the NAIA relied on its bylaws to force the forfeiture of the contents in which Orlando competed in the 2025 spring season:

> The NEC has reviewed the case submission in regards to Faulkner University allowing student-athlete, Orlando Lorduy, to represent your institution in competition despite the fact that the student-athlete had already exhausted his four seasons of competition in the sport of baseball. This participation occurred in violation of Article V, Section D, Item 1 of the NAIA Bylaws.
> ...
> Pursuant to Article VI, Section B, Item 2, Faulkner University shall notify the appropriate institutions and forfeit all applicable contests in which the student-athlete competed in while ineligible.

(Ex. 8 – Determination letter from NAIA.)

32.    On April 21, despite her comments less than a week earlier of

Faulkner's having "tried its best to verify the statistical information," White told representatives for Faulkner that due diligence in determining Orlando's eligibility would have required Faulkner to personally contact Benedictine University – something never before required of Faulkner. (Ex. 3 – Affidavit of Dr. Cindy Walker.)

33.    The NAIA directed Faulkner to report the forfeits to the schools it played against "within 10 days of receipt of the NEC closing letter"; that is, by April 29, 2025. (Ex. 8.)

## The NAIA's Bylaws and Faulkner's Exhaustion of Administrative Remedies

34.    As cited by the NAIA, eligibility and participation by NAIA student-athletes at NAIA member schools, like Faulkner, are governed by the NAIA's bylaws. (Ex. 9 – NAIA Bylaws.)

35.    Article VI – Section B of the NAIA's Bylaws, titled "Infractions," sets the parameters in subsection (9) for when forfeiture for infractions shall not occur:

NOTE:  Forfeits shall not be required nor will an institution be subject to any penalties if a student who has been properly certified as eligible represents an institution in competition but is subsequently determined to have been ineligible due to any of the following:

    a. A mistake by the NAIA Eligibility Center;
    b. False information was supplied by the student; or
    c. False information was supplied on the student's behalf.

Forfeits shall be required and the institution may be subject to additional penalties if the institution knew of the eligibility center's mistake or the dissemination of false information, or if the institution failed to perform due diligence on the student's eligibility certification.

(Ex. 9.)

36.     Article VI – Section E of the Bylaws, titled "Appeals," allows Faulkner to appeal a decision of the National Eligibility Committee. (Ex. 9.)  Such appeal must be made "within 30 days of notification …." (Id.)

37. On April 24, 2025, Faulkner University filed its appeal of the National Eligibility Committee's April 19, 2025, decision that Faulkner University must forfeit all contests that Orlando competed in during the 2025 Spring baseball season.

38.     However, no timeline for a decision on the appeal is provided in the Bylaws; instead, the Bylaws merely suggest that a decision will be made at an indeterminate time:

The National Coordinating Committee will review the written request for appeal and reach one of the following decisions:

(Ex. 9.)

39.     This appeal by Faulkner University exhausts every administrative remedy available to Faulkner under the NAIA's bylaws.

## V.     MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND CAUSES OF ACTION.

The NAIA breached its bylaws with Faulkner, its member institution, when it determined that Faulkner had to forfeit all the 2025 games that Orlando competed in. (Ex. 8 and 9.) Specifically, the NAIA breached its bylaws by allowing Orlando's subsequently determined ineligibility to trigger a forfeiture in contravention of the bylaws' exclusion from forfeiture this exact situation:

NOTE: Forfeits shall not be required nor will an institution be subject to any penalties if a student who has been properly certified as eligible represents an institution in competition but is subsequently determined to have been ineligible due to any of the following:

  a. A mistake by the NAIA Eligibility Center;
  b. False information was supplied by the student; or
  c. False information was supplied on the student's behalf.

Forfeits shall be required and the institution may be subject to additional penalties if the institution knew of the eligibility center's mistake or the dissemination of false information, or if the institution failed to perform due diligence on the student's eligibility certification.

(Ex. 9.)

Because Faulkner's baseball team's 2025 season "hangs in the balance," Faulkner requests this Court issue a Temporary Restraining Order and Injunction, pursuant to Fed. R. Civ. Proc. 65, preventing the NAIA from declaring any of Faulkner's games to be forfeited.

As this Court is aware, "[a] temporary restraining order should issue only where the moving party demonstrates (1) that there is a substantial likelihood of success on the merits, (2) that the temporary restraining order is necessary to prevent irreparable injury, (3) that the threatened injury outweighs the harm the temporary restraining order would cause to the nonmoving party, and (4) that the temporary restraining order would not be adverse to the public interest." Highway 29, LLC v. Lee Cnty. Commission, 2021 WL 6926815, at *1 (M.D. Ala. Apr. 22, 2021).

The second, third, and fourth elements are all without any factual dispute and are in favor of a temporary restraining order and an injunction against the NAIA from preventing Faulkner from forfeiting any of Faulkner's baseball games.

First, Faulkner received notice of the NAIA's decision on Saturday, April 19, just ten days before the start of the SSAC tournament, and just six days before the final seeding for the tournament. Faulkner's baseball team has performed at a high level this season and would undisputedly be in the SSAC's tournament but for the NAIA's improper ruling. Because Faulkner cannot compete in the conference tournament due to the NAIA's determination, Faulkner will be unable to compete in the National Tournament. Such a penalty is an undisputed, immediate, and irreversible injury necessitating a temporary restraining order, and injunction should issue.

Next, because Faulkner's regular season conference record is so good, Faulkner has already earned a spot in the tournament. Allowing Faulkner to play in the tournament changes nothing for the SSAC and the NAIA; neither the SSAC nor the NAIA will suffer any undue burden, harm, or injury as a result of Faulkner's participation in the tournament. Faulkner, on the other hand, will suffer injury to its reputation that will extend across all sports if it is not allowed to compete in the tournament. It is axiomatic that a reprimand and forfeiture of a college's sports contests will cause injury to its reputation.   See Trs. of California State Univ. & Colleges v. Nat'l Collegiate Athletic Assn., 82 Cal. App. 3d 461, 147 Cal. Rptr. 187 (Ct. App. 1978) (holding that the effect of suspension on the university and its reputation was sufficiently substantial to warrant judicial intervention.) Thus, the

threatened injury to Faulkner far outweighs the harm that a temporary restraining order and injunction would cause to the NAIA or to the SSAC; a temporary restraining order and injunction should therefore issue in this case.

And finally, requiring the NAIA to comply with its own bylaws entered into with its member institutions does not violate any public interest or trust – just the opposite, in fact.

> [T]his Court has recognized that the constitution and [bylaws] of both incorporated and unincorporated societies and associations are binding on the organization and members thereof if not in contravention of law or public policy.
> ....
> In relation to the binding effect of bylaws, this Court has stated:
>
>> "It is well established that the constitution, bylaws, rules and regulations of a voluntary association constitute a contract between the association's members, which is binding upon each member so long as the bylaws, etc., remain in effect."

Dawkins v. Walker, 794 So. 2d 333, 338-39 (Ala. 2001) (brackets in original). A temporary restraining order should therefore issue.

The only element at issue, then, is whether Faulkner can prove that it has a likelihood of success on the merits of its claim that the NAIA breached its bylaws when it declared that Faulkner had to forfeit its games. As set forth below, Faulkner will succeed on the merits.

**A.    The NAIA cannot forfeit Faulkner's games because the NAIA's Eligibility Center made a mistake, Orlando supplied Faulkner with**

**false information, and the NAIA and Benedictine University supplied false information on behalf of Orlando.**

The NAIA's bylaws regarding forfeiture are clear:

Forfeits shall not be required nor will an institution be subject to any penalties if a student who has been properly certified as eligible represents an institution in competition but is subsequently determined to have been ineligible due to any of the following:

a. A mistake by the NAIA Eligibility Center;
b. False information was supplied by the student; or
c. False information was supplied on the student's behalf.

Forfeits shall be required and the institution may be subject to additional penalties if the institution knew of the eligibility center's mistake or the dissemination of false information, or if the institution failed to perform due diligence on the student's eligibility certification.

(Ex. 9.)

First, the NAIA Eligibility Center made a mistake when Woytych emailed Orlando on July 15, 2024, that "Spring 2021 did not count towards your overall terms of attendance or seasons charged." (Ex. 10 – Email from Woytych to Orlando.) There is no question this was a mistake, because the NAIA has now asserted that Orlando's Spring 2021 contests <u>did</u> count toward his seasons charged, leaving Orlando no eligibility to play for Faulkner in the spring 2025 season. It matters not that Woytych's email also directed Orlando to check with his "AD on campus" about "any eligibility left;" Woytych was clear: "Spring 2021 did not

count….” And whether Orlando had "any eligibility left" **after** not counting his "Spring 2021" as directed by Woytych was the very issue for which Orlando sought the Eligibility Center's advice.  The NAIA cannot discount its own mistake. The Bylaws are clear: "A mistake by the <u>NAIA Eligibility Center</u>" (of which Woytych was and still is a representative) cannot serve as the basis for the NAIA's forfeiture of Faulkner's games.

Second, on July 23, 2024, Orlando received correspondence between his former college, Benedictine University, and the NAIA's Legislative Services department that contradicted Woytych's belief that Orlando's 2021 season would not be charged against him. (Ex. 11 – July 2024 emails between Benedictine-Mesa University and NAIA.)  Orlando admitted that he did not share this email exchange with anyone at Faulkner until after his eligibility was questioned in April 2025. (Ex. 2 – Affidavit of Orlando Lorduy.)  Again, the Bylaws are clear: "False information supplied by the student" is not a basis for the NAIA to forfeit Faulkner's games.

Finally, both Benedictine University and the NAIA supplied Faulkner with false information about Orlando's eligibility to play in the 2025 season.

Benedictine University's publicly available statistics for 2021 substantiated that Orlando played in only one game for the school that season.  (Ex. 3 – Affidavit of Dr. Cindy Walker.)  This stat sheet supplied by Benedictine University is what Dr. Walker reviewed on behalf of Faulkner to double-check Orlando's game

participation during his 2021 COVID year. (Ex. 3.) If Orlando did indeed play more than 50% of the games, Benedictine University chose not to make that information available.

The NAIA's COVID policy in place at that time provided that the 2021 season would not count against a student-athlete's eligibility if the player did not play in more than 50% of the contests. (Ex. 3.) So under the NAIA's own COVID policy for 2021, if Orlando had competed in only one game as communicated by Benedictine University, then 2021 would not have counted against Orlando.

Further, in January 2025, Dr. Walker certified to the NAIA the student-athletes on Faulkner's baseball team. (Ex. 3.) Orlando was listed on the roster submitted to the NAIA. After receiving the roster, the NAIA approved the roster. But now, just days before the SSAC's tournament, the NAIA has taken the position that it was aware of and told Orlando in July 2024 of his ineligibility. But if the NAIA knew in July 2024 that Orlando was ineligible to play, why, in January 2025, did it approve Faulkner's roster with Orlando on it?

Because the NAIA supplied incorrect information – that is, that Orlando was eligible for certification for the Spring 2025 season – and chose, until now, not to alert Faulkner to the NAIA's mistake. Once again, though, the Bylaws are clear: "False information supplied on the student's behalf" is not a basis for the NAIA to forfeit Faulkner's games. See Trs. of California State Univ. & Colleges, 82 Cal.

App. 3d at 474 (holding that where subject students were eligible by association standards when they competed, the association could not retroactively apply a subsequent interpretation of eligibility rules so as to render students ineligible at time of their prior performance, and subject the university to sanctions).

Faulkner will succeed on the merits of its claim that the NAIA breached its Bylaws when it declared that Faulkner had to forfeit its games.  A temporary restraining order and injunction should therefore issue.

### B.   Faulkner acted with due diligence in determining Orlando's 2025 eligibility.

The Bylaws state: "[f]orfeits shall be required ... if [Faulkner] knew of the eligibility center's mistake or the dissemination of false information, or if the institution failed to perform due diligence on [Orlando]'s eligibility certification."

There is no contention that Faulkner knew of the eligibility center's mistake, or that it knew that false information had been supplied by Orlando, Benedictine University, and the NAIA. The only issue, then, is whether Faulkner acted with due diligence in determining Orlando's eligibility.

In a phone call with Faulkner representatives on Monday, April 21, 2025, Ms. White, the NAIA's Director of Legislative Services, articulated the NAIA's position of why, despite (1) the mistake by the Eligibility Center, (2) the false information supplied by Orlando, and (3) the false information supplied on Orlando's behalf,

forfeiture would be imposed. Ms. White expressed that due diligence would have been performed if Faulkner had reached out to Benedictine to confirm what the student's stats were at Benedictine. (Ex. 3 - Affidavit of Dr. Cindy Walker.)

The NAIA is not the arbiter of the phrase "due diligence" when it chose not to define that in its Bylaws. State Farm Fire & Cas. Co. v. Lacks, 840 F. Supp. 2d 1292, 1297 (M.D. Ala. 2012). "Due diligence" means:

> The diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation.

DILIGENCE, Black's Law Dictionary (12th ed. 2024).

Dr. Walker, who has served as Faulkner's Faculty Athletic Representative for 25 years, testified that she would not, in her general practice, have ever contacted another institution about a student-athlete's eligibility when publicly available statistics confirmed the student-athlete's eligibility, and when the student-athlete's eligibility had also been confirmed by the NAIA's Eligibility Center. (Ex. 3.) Dr. Walker testified that she conducted her ordinary, diligent investigation into Orlando's eligibility and determined, based on the correspondence from Woytych and on statistics publicly provided by Benedictine University showing that Orlando participated in only one game during the 2021 season, that Orlando was able to be properly certified on Faulkner's roster. (Ex. 3.) Faulkner's efforts clearly meet the definition of "due diligence." The NAIA cannot now, after supplying bad

information to Faulkner, decide that "due diligence" would have required Faulkner to access other information not supplied to Faulkner, and via a means not used by Faulkner in its ordinary and reasonable eligibility determination process. Faulkner had not previously been required to make phone calls to each and every one of the hundreds of colleges for which its student-athletes may have played. And indeed, only days before the NAIA's about-face on the issue of "due diligence," White confirmed on behalf of the NAIA that "[i]t does sound like Faulkner tried its best to verify the statistical information." (Ex. 5 – Emails between Dr. Cindy Walker and Brenda White.) The NAIA's attempt to now foist only Faulkner a different definition of "due diligence" flies in the face of the NAIA's earlier stance.

The NAIA cannot retrofit a previously unused method to create a faux "due diligence" problem for Faulkner. Faulkner clearly used ordinary and reasonable due diligence in discharging its obligation to determine Orlando's eligibility.

Faulkner will succeed on the merits that the NAIA breached its Bylaws when it declared that Faulkner had to forfeit its games. A temporary restraining order should therefore issue.

### C.    Exhaustion of Administrative Remedies.

The Bylaws allow Faulkner to appeal the NEC's closing letter that required forfeiture of Faulkner's games. Faulkner filed its appeal on April 24, 2025. To be clear, Faulkner does not assert that filing an appeal is required before seeking relief

from this Court. In fact, a member need not exhaust a corporate administrative remedy based on a showing of irreparable harm. See Baldwin Cnty. Elec. Membership Corp. v. Catrett, 942 So. 2d 337 (Ala. 2006) (holding that members of county electric membership corporation were not required to exhaust corporate remedies or to make a direct demand in order to bring a direct action to enforce their voting rights for board of trustees elections); McPhillips v. Blue Cross Blue Shield of Alabama, 2010 WL 3833950 (M.D. Ala. Sept. 23, 2010); Se. Cannabis Co., LLC v. Alabama Med. Cannabis Comm'n, 2024 WL 5178114 (Ala. Civ. App. Dec. 20, 2024) (plaintiffs were not required to exhaust administrative remedies over claim challenging rescission of license where "by the time the circuit court obtains jurisdiction to review a final decision, it is possible that no [] licenses will be available."; "The remedy of judicial review following a final decision would be inadequate if there is some suggestion that the administrative ruling, if incorrect, could not be remedied so as to cause irreparable harm.) Faulkner does assert, thought, that it filed an appeal and has not yet received any ruling from the NAIA.

### D.    Faulkner's Relief Sought.

Faulkner seeks two forms of relief. First, and as is contemplated by the Bylaws, because the NAIA cannot forfeit any of Faulkner's baseball games, Faulkner seeks a temporary restraining order and injunction against the NAIA from any forfeiture. Doing so maintains Faulkner's record and allows it to compete in the

SSAC's tournament and for a chance to play in the NAIA's National Tournament.

In the alternative, if there is any issue regarding the appeal filed by Faulkner to the NAIA, Faulkner requests this Court enjoin the SSAC from holding its tournament until the NAIA can issue a ruling and Faulkner can seek relief from that ruling, if appropriate.

## VI.    CONCLUSION: ORLANDO MAGIC.

On April 13, 2025, Orlando hit a 10th inning homerun for Faulkner to seal the series over William Carey. This victory gave Faulkner a head-to-head advantage over William Carey in the SSAC standings. Two days later, William Carey contacted the SSAC about Orlando. But Orlando had played in Faulkner's previous games against William Carey not only in that series, but in the entire season up to that point. Magically, upon this eleventh-hour "discovery" by William Carey, the NAIA "discovered" that Faulkner did not conduct due diligence in certifying Orlando. As shown above, nothing could have been further from the truth.

## VII.   SERVICE AND NOTICE.

As this Court may expect, Faulkner has communicated with both the NAIA and the SSAC this previous week. Faulkner has sent letters to Jim Carr, President of the NAIA (and a former Maynard Cooper attorney in Birmingham.) https://www.naia.org/information/directory/bios/jim-carr?view=bio.   In addition, Faulkner has communicated with Mike Hall, Commissioner of the SSAC.

https://ssacsports.com/staff.aspx?staff=92. As this Court would expect, this Verified Complaint and Emergency Temporary Restraining Order will be sent by Faulkner to President Carr and Commissioner Hall, using all their contact information upon filing as well as any Orders, requests, etc.

SCOTT M. SPEAGLE (ASB0705t78s)
JACOB B. HULCHER (ASB5344t96y)
Attorneys for Faulkner University

OF COUNSEL:

WEBSTER, HENRY, COHAN, SPEAGLE,
DESHAZO & BANKSTON, P.C.
Post Office Box 239
Montgomery, Alabama 36101-0116
Telephone: (334) 264-9472
Facsimile: (334) 264-9599
Email: scott@websterhenry.com

Faulkner University

By: _____

Its: _Pres id ent_____

State of Alabama_____ )
County of _State At Large_____ )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that _Mitch Henry_____, is signed to the foregoing document, and who is known to me, acknowledged before me on this day that the foregoing document is true and correct to the best of his knowledge, information, and belief, and as such officer and with full authority, executed the foregoing for and as the act of said corporation.

    Given under my hand this the 25 day of _April_____, 2025.



NOTARY PUBLIC

(SEAL)

My Commission Expires:

BEVERLY D. TOLLIVER
My Commission Expires
February 10, 2029

**<u>PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:</u>**

National Association of Intercollegiate Athletics ("NAIA")
20 W. 12th Street, Suite 700
Kansas City, Missouri 64105

Southern States Athletic Conference, Inc.
c/o Brenau University
3139 Campus Drive
Norcross, Georgia 30071

*Or AND*

1364 Birch River Drive
Dahlonega, Georgia 30533-7130