IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FAULKNER UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-cv-306-ECM |
| | ) | [WO] |
| NATIONAL ASSOCIATION OF | ) | |
| INTERCOLLEGIATE ATHLETICS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Faulkner University ("Faulkner") is a member of the Southern States Athletic Conference, Inc. ("SSAC"), a conference of the National Association of Intercollegiate Athletics ("NAIA"). In mid-April 2025, Faulkner discovered that its baseball team had unknowingly used an ineligible player, Orlando Lorduy ("Lorduy"), in thirty-nine games during the 2025 season. After Faulkner self-reported this discovery, the NAIA determined that Faulkner must forfeit all thirty-nine games in which Lorduy played. As a result, Faulkner may no longer compete in the SSAC's postseason tournament, which begins on April 30, 2025, or the opening round of the NAIA's National Tournament.

On April 25, 2025, Faulkner sued the NAIA and the SSAC (collectively, "Defendants") in this Court, alleging that the forfeiture sanction imposed on Faulkner violates the NAIA's Bylaws. Faulkner sought an emergency temporary restraining order and preliminary injunction enjoining the NAIA from forfeiting any of Faulkner's 2025

baseball games, or in the alternative, enjoining the SSAC from conducting its 2025 postseason tournament until it can be determined whether Faulkner must forfeit any 2025 baseball games.

The Court held oral argument on April 28, 2025. At the hearing, Faulkner withdrew its request for a temporary restraining order and represented that it was pursuing only a preliminary injunction. Ruling from the bench, the Court denied Faulkner's motion for a preliminary injunction and explained that a written opinion would follow. This opinion memorializes the Court's oral ruling denying Faulkner's motion.

## II.  JURISDICTION

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Based on the allegations of the verified complaint (doc. 1), which, as to personal jurisdiction, the Defendants do not dispute, the Court concludes that it can properly exercise personal jurisdiction over the Defendants and that venue properly lies in the Middle District of Alabama, *see* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

The Court may grant a preliminary injunction if Faulkner demonstrates: (1) a substantial likelihood of success on the merits; (2) that Faulkner will suffer irreparable injury if the relief is not granted; (3) that the threatened injury to it outweighs the harm the relief would cause the other litigants; and (4) that entry of relief would not be adverse to the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such relief is "'not to be granted unless the movant clearly established the "burden of persuasion"' for each prong of the analysis." *Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014) (citation omitted). As the movant, Faulkner must satisfy its burden on all four elements "by a clear showing." *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted). Failure to meet any of the elements "is fatal" to the request. *Grayson v. Comm'r, Ala. Dep't of Corr.*, 121 F.4th 894, 896 (11th Cir. 2024) (citation omitted), *cert. denied sub nom. Grayson v. Hamm*, 2024 WL 4846625 (U.S. Nov. 21, 2024).

## IV.  BACKGROUND

At issue in this case is the interpretation of the NAIA Bylaws which govern all colleges and universities that compete as part of the NAIA, and whether the NAIA breached its Bylaws when it required Faulkner to forfeit the thirty-nine games in which Lorduy played in the 2025 season. The Court will summarize the relevant Bylaws before turning to the facts of the case.

**A.     The NAIA Bylaws**

Pursuant to Article V, Section D, Item 1, "[a] student may participate four seasons in one sport in 10 semesters, 12 trimesters or 15 quarters of attendance if otherwise eligible. The 10 semesters need not be consecutive." Nat'l Ass'n of Intercollegiate Athletics, *2024–2025 Official Policy & Handbook*, at 80 (39th ed. Aug. 2024), https://www.naia.org/legislative/2024-25/files/2024_Official_Handbook.pdf [hereinafter

*NAIA Handbook*].[1]  Article V, Section B, Item 20.a. defines "season of competition" as "[p]articipation in more than 20% of the maximum allowable number of intercollegiate contests or dates (excluding scrimmages) at an NAIA institution, whether in a varsity, junior varsity or freshman program, during the 24-week season. Any participation in NAIA-approved postseason shall result in a season of competition." *NAIA Handbook*, at 63 (parenthetical in original).

Under the Bylaws, the NAIA can force a member institution to forfeit all games in which an ineligible player competes.  Article VI, Section B, Item 9, states:  "Any member institution which permits the use of a student who is ineligible according to NAIA rules and standards in either program in which it holds membership shall thereby automatically," among other penalties, "[f]orfeit all contests in which a student participated who did not meet all NAIA eligibility requirements or the institutional violation occurred." *Id.* at 93. Item 9 further states that "[f]orfeits shall not be required nor will an institution be subject to any penalties if a student who has been properly certified as eligible represents an institution but is subsequently determined to have been ineligible due to any of the following":  "A mistake by the NAIA Eligibility Center"; "False information was supplied by the student"; or "False information was supplied on the student's behalf." *Id.* at 94.  But Item 9 further provides that "[f]orfeits shall be required" if the institution knew of the NAIA's mistake or the provision of false information, "or if the institution failed to perform due diligence on the student's eligibility certification." *Id.*

---

[1] All citations to the *NAIA Handbook* refer to the official page numbers assigned by the NAIA and located at the bottom right corner of each page.

For the 2020–21 season, the NAIA adopted special rules in consideration of the COVID-19 pandemic. The COVID rules provided that students would only be charged with a season of competition ("SOC") "if they play in more than 50% of the frequency of play limits for their sport OR by competing in postseason competition."[2] (Doc. 1-3 at 9).

**B.    Orlando Lorduy's Intercollegiate Baseball Career**

Lorduy began his intercollegiate baseball career in 2019–20 at a junior college in Ohio.[3] (Doc. 1-2 at 9). He then transferred to Benedictine University Mesa ("Benedictine") and competed on the baseball team during the 2020–21 ("2021"), 2021–22 ("2022"), and 2022–23 ("2023") seasons. (Doc. 1-2 at 1). According to the statistics published on the Benedictine website, Lorduy competed in a single game in the 2021 season on May 18, 2021. (Doc. 1-3 at 5). But Lorduy's bio from the Benedictine website indicates that in 2021, he "[c]ompeted in 34 games[, starting] in 32 of those [games]. He finished the season with 48 hits including 8 doubles, 3 triples, and 1 homerun." (*Id.*).

After three years at Benedictine, Lorduy transferred to Faulkner and competed on the baseball team during the 2024 season, which the parties now agree was his fourth and final year of eligibility for an NAIA institution. (Doc. 1-2 at 1). In January 2024, after Lorduy transferred to Faulkner and prior to the 2024 baseball season, Faulkner completed and submitted both the NAIA-required Official Eligibility Certificate and the Transfer

---

[2] For baseball, a player would be charged an SOC if he or she played in 28 or more games. Nat'l Ass'n of Intercollegiate Athletics, *NAIA Regular Season COVID Manual*, at 13 (Feb. 1, 2021), https://www.naia.org/covid19/files/Regular_Season_COVID_Manual_1.31.21.pdf (last visited Apr. 29, 2025).

[3] It is undisputed that Lorduy's junior college play in 2019–20 does not count as an SOC.

5

Player Eligibility Statement on Lorduy's behalf. (Docs. 10-1, 10-2). These documents identified and confirmed Faulkner's determination that Lorduy had completed three (of four) SOCs prior to his arrival at Faulkner, including his 2021 season at Benedictine. The Official Eligibility Certificate—electronically signed by the athletics director, head baseball coach, registrar, and faculty athletics representative—specifically certified that the "Previous seasons of competition" determination was "complete and correct according to official records." On Faulkner's senior day in 2024, Faulkner honored Lorduy. (Doc. 1-5 at 2).

**C.     Lorduy's Communications with the NAIA and Faulkner's Investigation**

Following the conclusion of Faulkner's 2024 baseball season, Lorduy independently believed that he had another year of eligibility and emailed the generic NAIA Eligibility Center Customer Relations address (ecinfo@naia.org) to see if he could continue to play at Faulkner. (Doc. 1-2 at 1). On July 15, 2024, Ben Woytych ("Woytych"), an NAIA employee who works in the Eligibility Center, responded to Lorduy's inquiry. He wrote, "Spring 2021 did not count towards you[r] overall terms of attendance or seasons charged. . . . You will need to talk to you[r] AD on campus and have them map out each term / season you have used in the past to see if you have any eligibility left."[4] (Doc. 1-2 at 7). Lorduy sent a screenshot of the email to Jonathan Villa ("Villa"), an assistant coach and recruiting coordinator for the Faulkner baseball team. (*Id.* at 1). Villa then contacted

---

[4] As part of Lorduy's inquiry, and after Wyotych's July 15 email, Benedictine confirmed to the NAIA and Lorduy that he was charged for a season of competition for the 2021 season and had no remaining eligibility. (Doc. 1-2 at 7–9). Lorduy did not share these emails with anyone at Faulkner until April 22, 2025. (*Id.* at 1–2).

6

Dr. Cindy Walker ("Dr. Walker"), Faulkner's Assistant Athletic Director for Compliance and Academic Success. (Doc. 1-3 at 1).  As part of her job, Dr. Walker is in charge of eligibility for students. (*Id.*).

After receiving the message from Villa, Dr. Walker independently investigated whether Lorduy had any remaining eligibility. (*Id.*).  She reviewed the NAIA's response to Lorduy's inquiry; reviewed some of the official public records from Benedictine's 2021 baseball season; and looked at Dakstats, an online statistics database used by NAIA schools, for any other records, but the Dakstats information was not available. (*Id.* at 1–2). Dr. Walker avers that based on what she saw on Benedictine's website, Lorduy competed in a single game in the 2021 season on May 18, 2021. (Doc. 1-3 at 5).  It is undisputed that the May 18, 2021 game was a postseason game and that Faulkner knew it was a postseason game.  Dr. Walker claims that the steps she took to certify Lorduy's eligibility were the same as those she would take for any other student. (*Id.* at 2).  Based on her independent review of all the evidence she gathered, she believed Lorduy had another season of eligibility because the 2021 season did not count as an SOC. (*Id.*).

On January 16, 2025, Faulkner certified Lorduy to play baseball for the 2024–25 ("2025") season and included him on the roster it sent to the NAIA. (*Id.*).  The NAIA received and approved Faulkner's roster. (*Id.*).  Lorduy played in every game for Faulkner this season prior to Faulkner receiving notice in April that he was ineligible. (Doc. 1-1 at 2).

**D.     Events of April 2025 and the NAIA's Ruling on Lorduy's Eligibility**

On April 14 and 15, 2025, following a weekend series between Faulkner and William Carey University ("William Carey"), William Carey's athletic director communicated with Dr. Walker to inform her that Faulkner played an ineligible player—Lorduy—in their series.[5] (Doc. 1-7 at 1–3). With this information, Dr. Walker contacted Dr. Brenda White ("Dr. White"), the NAIA's Director of Legislative Services, to seek additional guidance. (Doc. 1-5 at 5). Dr. White informed Dr. Walker that "Faulkner will need to self-report this information to the NEC and outline all of the steps [Faulkner] took to verify the student's competition during this term." (*Id.*). Dr. White noted that "[i]t does sound like Faulkner tried its best to verify the statistical information." (*Id.*). At 4:54 a.m. on April 19, 2025, the NAIA informed Faulkner that Lorduy was not eligible to compete and required Faulkner to forfeit every game in which Lorduy appeared. (Doc. 1-3 at 2). The NAIA found that Faulkner violated Article V, Section D, Item 1 of the NAIA Bylaws by allowing Lorduy to compete. (Doc. 1-8 at 1). As noted above, under Article V, Section D, Item 1, "[a] student may participate four seasons in one sport in 10 semesters, 12 trimesters or 15 quarters of attendance if otherwise eligible."

On April 21, 2025, Faulkner had a phone call with NAIA leadership in which Dr. White expressed that "there should have been some sort of communication between Faulkner and Benedictine to ask how much the student competed." (Doc. 1-3 at 2).

---

[5] Lorduy hit a walk-off homerun in the final game of the series between Faulkner and William Carey.

Dr. Walker stated that calling another university when so much information was available publicly would be abnormal. (*Id.* at 3).

E.     **Ramifications of NAIA's Decision and Faulkner's Administrative Appeal**

Because of the NAIA's decision to have Faulkner forfeit every game in which Lorduy competed, Faulkner does not qualify for the SSAC conference tournament and will miss the opportunity to qualify for the NAIA National Tournament. (Doc. 1 at 1–2). With its record prior to the forfeits, Faulkner would qualify for the SSAC tournament as a top 3 seed. (Doc. 1-1 at 1). If the NAIA's decision to force Faulkner to forfeit every game in which Lorduy competed stands, Faulkner will miss the postseason.

Faulkner appealed the NAIA's National Eligibility Committee's decision to require Faulkner to forfeit all games to the National Coordinating Committee. On April 28, 2025, the National Coordinating Committee affirmed the National Eligibility Committee's decision. (Doc. 14).

## V.  DISCUSSION

To establish a substantial likelihood of success on the merits of its breach of bylaws claim, Faulkner must show that the NAIA's ruling that Faulkner must forfeit thirty-nine games of the 2025 season violates the NAIA Bylaws. Under Alabama law,[6] the bylaws of

---

[6] "A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (quoting *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992)). Thus, this Court must apply Alabama's choice-of-law rules. In contract cases, Alabama follows the rule of *lex loci contractus*. *Id.*; *Blalock v. Sutphin*, 275 So. 3d 519, 523 (Ala. 2018). Under this principle, the law of the forum where the contract was formed generally applies, unless the parties have contractually selected another jurisdiction's law to govern. *Blalock*, 275 So. 3d at 523. Here, both sides assert that Alabama law applies, and the Court discerns nothing in the Bylaws or other record evidence which compels a different result. Therefore, the Court applies Alabama law to Faulkner's claim.

a voluntary association are a binding contract between the association and its members. *See Dawkins v. Walker*, 792 So. 2d 333, 339 (Ala. 2001).[7] "Any dispute between a voluntary association and one of its members concerning the construction or validity of the association's constitution, bylaws, rules and regulations constitutes a dispute as to the construction or validity of a written contract." *Wells v. Mobile Cnty. Bd. of Realtors*, 387 So. 2d 140, 142 (Ala. 1980)).

It is undisputed that, under the Bylaws and the NAIA's 2021 COVID rules, Lorduy's play for Benedictine during the 2021 season "counted" as a season of competition, and that Lorduy thus was ineligible to play baseball for an NAIA member school in 2025 because he had exhausted all four seasons of competition as of 2024. It is also undisputed that, despite his ineligibility, Lorduy played for Faulkner in thirty-nine games of the 2025 baseball season. Under Article VI, Section B, Item 9 of the NAIA Bylaws,[8] Faulkner must forfeit the 2025 season games in which Lorduy played if Faulkner

---

[7] Relying on *Dawkins*, the Defendants argue that this Court is not a proper forum to adjudicate the parties' dispute because courts may not interfere with the internal affairs of a voluntary association. But *Dawkins* also explained that the Alabama Supreme Court "has held that '[j]udicial review of an organization's actions is available to a member of the organization who challenges such action[s] on the grounds that [they do] not conform to the organization constitution or [bylaws].'" 794 So. 2d at 338 (alterations in original) (quoting *Mitchell v. Concerned Citizens of the CVEC, Inc.*, 486 So. 2d 1283, 1287 (Ala. 1986)). That is precisely what Faulkner does here: it challenges the NAIA's decision requiring Faulkner to forfeit its 2025 baseball games on the grounds that the decision does not conform to the NAIA's Bylaws. Consequently, this Court may adjudicate the parties' dispute.

[8] The Defendants contend that Faulkner's reliance on Article VI, Section B, Item 9, is misplaced because the NAIA determined forfeiture was required under a different provision: NAIA Bylaw Article VI, Section B, Item 2. Item 2 provides that "[f]orfeits are required in cases where the National Eligibility Committee or the affected institution has determined that a competing student was academically ineligible, an eligibility certificate was submitted over 5 days late, or other NAIA Bylaws regulations have been violated, other than administrative error(s) defined above." Considering the allegations in the complaint and the Bylaws as a whole, the Court finds that Article VI, Section B, Item 9 applies here. Under the general/specific canon of construction, if there is a conflict between a general provision and a specific provision, the specific provision prevails. Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL

10

"failed to perform due diligence on [Lorduy's] eligibility certification." (Doc. 1-9 at 12). Thus, to determine whether Faulkner has shown a substantial likelihood of success on the merits, the Court must decide whether Faulkner performed due diligence in determining Lorduy's eligibility for the 2025 season, and more specifically, whether Faulkner was sufficiently diligent in ascertaining whether Lorduy's play in 2021 "counted" towards his SOCs.

Faulkner argues that the NAIA's ruling that Faulkner must forfeit thirty-nine games of the 2025 season violates the NAIA Bylaws because forfeits are not required if a student was certified as eligible but later determined to have been ineligible due to "[a] mistake by the NAIA Eligibility Center" or "[f]alse information was supplied by the student." (Article VI, Section B, Item 9). Faulkner contends that these two "safety valves" are implicated here because (1) an NAIA employee mistakenly told Lorduy in an email that his 2021 season for Benedictine did not "count" as an SOC, *and* the NAIA approved Faulkner's 2025 roster which included Lorduy; and (2) Lorduy did not share with Faulkner the July 2024 emails between Benedictine and the NAIA indicating that in 2021, he had played in

---

TEXTS 183–88 (2012).  The Court perceives a conflict between Item 2 (the general provision) and Item 9 (the specific provision).  Item 2 contemplates no exception to the forfeiture requirement if the NAIA Bylaws regulations have been violated.  By contrast, Item 9, which deals with use of an ineligible student, states that forfeiture is *not* required in three circumstances (with further exceptions requiring forfeiture if the school knew of the mistake or false information, or did not perform due diligence).  In light of Item 9's specific provisions, Item 2's general provision must yield.  That the NAIA National Eligibility Center cited Item 2 in its ruling (*see* doc. 1-8) does not change the Court's conclusion.  Moreover, the Defendants assertion that Item 9 only applies when an institution *knowingly*, as opposed to mistakenly, uses an ineligible player is not supported by Item 9's text and also makes little sense, especially in light of Item 9's provision that forfeiture is required if the institution knew of the NAIA's mistake or the provision of false information.

11

more than 50% of games and in postseason competition.⁹  Faulkner also argues that it performed due diligence because it was reasonable to rely on the NAIA employee's email statement to Lorduy about the 2021 season not "counting" and the publicly available information Dr. Walker found on Benedictine's website, which stated that Lorduy played in only one game in 2021; and that Dr. Walker followed the same process she always follows when she investigated Lorduy's eligibility for the 2025 season.

The Bylaws do not define due diligence.  The Court finds, and the parties agree, that "due diligence" means what a reasonable actor would do under the circumstances. *See Diligence*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining due diligence as "[t]he diligence expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation"); *Due Diligence*, MERRIAM-WEBSTER DICTIONARY (defining due diligence as "such diligence as a reasonable person under the *same circumstances* would use" (emphasis added)), https://www.merriam-webster.com/dictionary/due%20diligence (last visited Apr. 28, 2025)).  Under these particular circumstances, Faulkner has not shown that it performed due diligence and thus

---

⁹ The Defendants contend that, due diligence aside, Item 9 supplies the NAIA with discretion to order forfeiture where a school used an ineligible player, even if one of the safety valves apply.  Item 9 states in relevant part that "[f]orfeits shall *not be required* nor will an institution be subject to *any penalties*" if the NAIA made a mistake or the student lied. (Doc. 1-9 at 12) (emphases added).  Faulkner asserts that, because one or more of these safety valves apply, Faulkner "cannot be subject to the penalty of forfeiting games for playing an ineligible player." (Doc. 1 at 2).  By contrast, the Defendants read the Bylaw to mean that "while a mistake by the Eligibility Center in the eligibility certification process or the student-athlete's provision of false information" eliminates *mandatory* forfeiture, "it does not remove the permissive imposition of forfeiture" because "nothing [in the language] prohibits it." (Doc. 10 at 15).  The crux of the parties' disagreement is whether "forfeits" are "penalties."  If they are, then forfeiture is disallowed whenever an institution qualifies for the safety valve.  If they are not, then the Bylaws merely state that forfeiture is not *mandatory* under the safety valve, but it is still *permissible*.  Because the Court ultimately determines that Faulkner failed to perform due diligence, the Court need not resolve the parties' disagreement.

12

cannot show that the NAIA breached its Bylaws in ruling that Faulkner must forfeit the 2025 games in which Lorduy played. Consequently, Faulkner has not established entitlement to the extraordinary remedy of a preliminary injunction.

First, the Court must dispel the notion suggested by Faulkner that other actors, such as the NAIA or Benedictine, bear responsibility for Faulkner's determination of Lorduy's eligibility. For example, Faulkner faults the NAIA for Woytych's email to Lorduy and for approving Faulkner's 2025 roster, and Faulkner criticizes Benedictine for not *sua sponte* giving Faulkner additional information about Lorduy's 2021 season. But Faulkner alone was responsible for determining Lorduy's eligibility. The Bylaws are clear that member schools are responsible for certifying their own students' eligibility. Article V, Section I, Item 1 states that "[i]t shall be the responsibility of the faculty athletics representative of each member institution to check the eligibility of each student prior to allowing the student to represent the institution in any manner . . . against competitors." Article VI, Section B, Item 9 echoes this principle because it mandates forfeiture if the member school "failed to perform due diligence on the student's eligibility certification" even if the NAIA also made a mistake, a student lied, or both. (Doc. 1-9 at 12). Thus, alleged NAIA mistakes and student misrepresentations, while troubling, are not dispositive. The buck stops with the school. Even if the NAIA made a mistake, even if Lorduy lied to Faulkner, and even if Benedictine did not volunteer to Faulkner additional information about Lorduy, Faulkner nonetheless must forfeit the 2025 baseball games in which Lorduy played if Faulkner did not perform due diligence in certifying Lorduy's eligibility.

13

Under the circumstances presented here, Faulkner did not perform due diligence. At the evidentiary hearing, Faulkner acknowledged that this situation was unique, and it represented that Lorduy was the only player for whom it had changed an eligibility determination. Thus, the inquiry is not what a reasonable school would have done to certify the eligibility of a typical student, but instead what it would have done to certify the eligibility of a student in Lorduy's situation and with his history. When Faulkner certified that Lorduy was eligible to play in 2025, it knew five material facts. First, in January 2023, Dr. Walker interviewed Lorduy and determined that his 2021 season with Benedictine counted as an SOC and that 2024 was his last eligible season. Second, in July 2024, Woytych responded to an inquiry from Lorduy that the 2021 season *did not* count—contradicting Faulkner's earlier eligibility determination. Third, after learning of Woytych's email, Dr. Walker checked Benedictine's website and saw that Lorduy played in the postseason in 2021, which, under the NAIA's COVID rules, means that 2021 *did* count and thus undercuts Woytych's email. Fourth, Dr. Walker attempted to find additional information about Lorduy on Dakstats, but the information was unavailable. Finally, the NAIA's COVID policy charged students an SOC if "they play more than 50% of the frequency of play limits for their sport or by competing in postseason competition." (Doc. 1-3 at 1, para. 6).

Riddled with inconsistencies, these facts raised more questions than answers about Lorduy's eligibility and should have spurred additional investigation—but Faulkner admits it did nothing else. Dr. Walker did not meet with Lorduy to ask how many games he played in 2021 or if he competed in the postseason. She did not contact anyone at Benedictine.

14

She did not follow up with anyone at the NAIA regarding Woytych's email or pursue an opinion from the NAIA through official channels. Instead, she found dispositive a single sentence in Woytych's email that 2021 did not count as an SOC—even though the NAIA's COVID rules and Faulkner's prior investigation pointed to a different result. Given the unique nature of Lorduy's situation and the inconsistent information available, it was unreasonable for Faulkner to rely so heavily on the Woytych email to determine eligibility, and it was similarly unreasonable to take no action beyond what Faulkner normally undertakes to determine eligibility. And while due diligence does not demand perfection, it required some additional investigation in the face of this unique situation and conflicting information.

While the Court need not opine on the precise steps Faulkner needed to take to satisfy the due diligence requirement, it needed to do more than rely on a single email from an NAIA employee, one page from a website (which contradicted the substance of the NAIA employee's email), and a lack of available information in a statistics database. On this record, Faulkner did not perform due diligence in determining that Lorduy's 2021 season was not an SOC and that he was eligible to play in 2025.

Because it has not shown due diligence, Faulkner has not established a substantial likelihood of success on the merits of its claim that the NAIA breached its Bylaws—"the most important preliminary-injunction criterion." *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127–28 (11th Cir. 2022). Consequently, Faulkner's motion is due to be denied on this basis alone, and the Court pretermits discussion of the equities. *See Schiavo*,

403 F.3d at 1226 ("Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion.").

## VI. CONCLUSION

Accordingly, for the reasons stated, it is

ORDERED that Faulkner's motion for a preliminary injunction is DENIED.

DONE this 29th day of April, 2025.

                                      /s/ Emily C. Marks
                              EMILY C. MARKS
                              CHIEF UNITED STATES DISTRICT JUDGE